**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 24 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

XIANMIN CAO,

Petitioner,

v.

TODD BLANCHE, Acting Attorney
General,

Respondent.

No. 21-413

Agency No.
A209-937-092

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 24, 2026
Honolulu, Hawaii

Before: N.R. SMITH, MILLER, and JOHNSTONE, Circuit Judges.
Concurrence by Judge Miller.

Xianmin Cao, a native and citizen of the People's Republic of China,

petitions for review of a decision of the Board of Immigration Appeals ("BIA")

dismissing his appeal from an Immigration Judge's ("IJ") (collectively, the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

"Agency") order denying his applications for asylum and withholding of removal based on an adverse credibility determination.[1]

Where, as here, "the BIA issues its own decision but adopts particular parts of the IJ's reasoning, we review both decisions." *Iman v. Barr*, 972 F.3d 1058, 1064 (9th Cir. 2020). We review adverse credibility determinations for substantial evidence. *Id.* We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

Considering the totality of the circumstances, the Agency's adverse credibility determination was supported by substantial evidence. *See Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010) (citing 8 U.S.C. § 1158(b)(1)(B)(iii)). The Agency noted inconsistencies in Cao's testimony about whether he had entered Vietnam and voluntarily returned to China before seeking asylum in the United States. Cao told an asylum officer that he went to Vietnam and detailed how he did so by crossing the China–Vietnam border at a remote location so that Chinese officials could not check Cao's ID. Yet Cao testified at his removal hearing that he did not enter Vietnam and only stayed at the border. This inconsistency bears on Cao's asylum and withholding claims because "[i]t is well established in this court that [a petitioner's] history of willingly returning to his or

---

[1] Cao withdrew his claim under the Convention Against Torture during the merits hearing before the IJ.

her home country militates against a finding of past persecution or a well-founded fear of future persecution." *Loho v. Mukasey*, 531 F.3d 1016, 1017–18 (9th Cir. 2008); *see also Ren v. Holder*, 648 F.3d 1079, 1089 (9th Cir. 2011) ("[E]ven minor inconsistencies that have a bearing on a petitioner's veracity may constitute the basis for an adverse credibility determination.").

The Agency also noted inconsistencies between Cao's testimony and his documentary evidence. For example, Cao testified that he graduated high school and submitted a copy of a 2014 high school certificate, yet his household register document listed his education at the elementary school level. Cao emphasizes in his petition that Chinese household register documents are not automatically updated. But Cao's household register document was apparently updated in August 2016, after he had applied for a student visa to study at a university in the United States. Thus, Cao's explanation for the inconsistency is unconvincing and does not compel reversal. *See Dong v. Garland*, 50 F.4th 1291, 1300 (9th Cir. 2022) ("Although one suspect document is unlikely to constitute substantial evidence of adverse credibility on its own, under the totality of the circumstances, the BIA reasonably concluded that it supported the IJ's credibility determination.").

"[S]ome of the reasons relied on by the [A]gency," such as Cao's purported lack of familiarity with Lutheranism, "do not support its ultimate credibility finding." *Kalulu v. Bondi*, 128 F.4th 1009, 1015 (9th Cir. 2024); *see also Li v.*

*Holder*, 629 F.3d 1154, 1157 (9th Cir. 2011) ("An IJ's perception of a petitioner's ignorance of religious doctrine is not a proper basis for an adverse credibility finding."). But "once those unsupported reasons are disregarded, substantial evidence remains to support the [A]gency's determination that [Cao] was not credible." *Kalulu*, 128 F.4th at 1015. Without credible testimony, the record does not compel the conclusion that Cao experienced past persecution or that he has a well-founded fear of future persecution in China. *See Wang v. Sessions*, 861 F.3d 1003, 1009 (9th Cir. 2017).

**PETITION DENIED.**

*Xianmin Cao v. Blanche*, No. 21-413

MILLER, Circuit Judge, with whom JOHNSTONE, Circuit Judge, joins, concurring:

Xianmin Cao seeks asylum and withholding of removal, claiming that he faces religious persecution in China. His claim for relief is almost entirely based on his own testimony, but the immigration judge found that his testimony was not credible, and the Board of Immigration Appeals affirmed that finding. We review the agency's decision for substantial evidence, and under that highly deferential standard, the agency's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014). Applying that standard, I agree that the inconsistencies in Cao's account—in particular, his conflicting statements about whether he left China for Vietnam and then returned to China—adequately support the finding that he did not testify credibly. For that reason, I join the court's disposition in full.

I write separately to address the agency's improper inquiry into and commentary on Cao's religious beliefs. At the removal hearing, after Cao stated that he attended services at a Lutheran church in Hawaii, the immigration judge asked him, "What is Lutheran? What does that mean?" Cao initially replied, "I don't know," but the transcript suggests that his confusion was the result of a difficulty in translation, because the interpreter interjected to suggest that Cao

1

"write down the characters," after which Cao was able to provide an answer: "Because of the faith, so there is righteousness." The immigration judge then asked, "That's what Lutheran means?" Cao answered, "That's my understanding."

The immigration judge asked no further questions about Cao's faith, but in her written findings, she reasoned that Cao's answer showed that he was not a credible witness:

> It is not plausible that [Cao] does not know what being Lutheran means if he has been attending church at a Lutheran church for almost two years. . . . He could not give any sort of coherent answer aside from saying "righteousness" when asked about Lutheranism. This casts doubt on whether he is actually Lutheran.

For its part, when the Board affirmed the immigration judge's order, it stated that "when asked what Lutheranism means, [Cao] was unable to coherently describe the religion," adding that his "inability to describe a religion he claims to have worshipped alongside for 2 years weighs against the veracity of his claim that he attended a Lutheran Church."

In this court, the government emphasized the brevity of Cao's response, arguing that the agency could reasonably have determined that it "was not a coherent answer" to the immigration judge's question because Cao "provid[ed] essentially a two-word answer." Cao's answer was admittedly brief (though longer than two words), but the immigration judge did not ask him to elaborate, so there is no basis for the government's assertion that Cao "wasn't able to give more

2

explanation." Nor is there any basis for the government's apparent assumption that a concise statement of one's faith demonstrates a lack of genuine belief. And it is particularly odd to decide that someone is not genuinely a Lutheran simply because he said, in effect, "Here I stand; I can do no other."

A removal proceeding should not be a forum for a theological disputation, and "[w]e have cautioned IJs against using an applicant's ignorance of religious doctrine as evidence that an individual is not a true believer." *Cosa v. Mukasey*, 543 F.3d 1066, 1070 (9th Cir. 2008) (quoting *Jiang v. Gonzales*, 485 F.3d 992, 995 (7th Cir. 2007)). "Both history and common sense," we have observed, "make amply clear that people can identify with a certain religion, notwithstanding their lack of detailed knowledge about that religion's doctrinal tenets." *Id.* (quoting *Rizal v. Gonzales*, 442 F.3d 84, 90 (2d Cir. 2006)).

Even if there is some room to "test the scope of a petitioner's understanding of her religion," it is improper "to do so, as here, without a benchmark other than the IJ's views." *Cosa*, 543 F.3d at 1070. That is precisely what the immigration judge and the Board did. Neither the immigration judge nor the Board appears to have understood that Cao's description of Lutheranism ("Because of the faith, so there is righteousness") was a close paraphrase of the Augsburg Confession of 1530, the foundational statement of Lutheran doctrine, which states that people "cannot be justified before God by their own strength, merits, or works but are

3

freely justified for Christ's sake, through faith . . . . This faith God imputes for righteousness." The Augsburg Confession art. IV (1530), *reprinted in The Book of Concord: The Confessions of the Evangelical Lutheran Church* 30 (Theodore G. Tappert ed. & trans., 1959); *see also The Book of Concord*, *supra*, at 23–24.

I assume that the immigration judge and the Board did not mean to disparage, as not "coherently describe[d]," a core article of faith held by millions of Lutherans—and many non-Lutheran Christians as well. More likely, they were simply ignorant of the theological significance of Cao's statement. The agency's treatment of Cao's faith was improper, and it is regrettable that the government defended it before this court.